## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

---

**UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,**
**100 F Street, N.E.**
**Washington, DC 20549**

                              **Plaintiff,**

          **v.**

**CHARLES MICHAEL MARTIN,**
**1502 North Ivanhoe Street**
**Arlington, Virginia 22210**

                            **Defendant.**

---

C.A. No. __-____

## COMPLAINT

Plaintiff United States Securities and Exchange Commission (the "Commission") alleges for its Complaint against Defendant Charles Michael Martin ("Martin") as follows:

## SUMMARY

1.      In 2002, Defendant Martin, who was employed by Monsanto Company ("Monsanto") as its Government Affairs Director for Asia, authorized and directed an Indonesian consulting firm ("Consulting Firm") to pay a bribe totaling $50,000 to a senior Indonesian Ministry of Environment official ("the Senior Environment Official").  The illegal payment was made to influence the Senior Environment Official to repeal language in a decree that was unfavorable to Monsanto's business in Indonesia.

2.      To generate the funds to make the illegal $50,000 payment, and to conceal the unlawful activity, Martin directed the Consulting Firm to create a set of invoices to falsely bill Monsanto in an amount sufficient to cover the illegal payment.  Martin subsequently approved the

false invoices for payment by Monsanto, and took steps to ensure that Monsanto paid the false invoices, thereby causing Monsanto's books and records to be falsified and circumventing Monsanto's system of internal accounting controls, which Monsanto was required to devise and maintain. As a result of Martin's actions, Monsanto falsely recorded the $50,000 payment in its books and records as a payment for consulting services when, in fact, it was an illegal payment to the Senior Environment Official. Even though Martin's scheme was carried out pursuant to his instructions and the $50,000 payment was made to the Senior Environment Official, the unfavorable decree remained in place.

3.    Through his conduct in devising and orchestrating the illegal payment, Martin violated, and aided and abetted violations of, the anti-bribery provisions of the Foreign Corrupt Practices Act, and the internal controls and books and records provisions of the federal securities laws as described below. By this Complaint, the Commission respectfully requests that the Court issue orders permanently enjoining Martin from committing, and from aiding and abetting, violations of the federal securities laws as alleged in this Complaint and directing Martin to pay a civil monetary penalty.

## <u>JURISDICTION AND VENUE</u>

4.    This Court has jurisdiction over this action pursuant to Sections 21(d)(3), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d)(3), 78u(e), and 78aa]. In connection with the conduct described herein, the defendant, a United States citizen and national, made use of the mails and a means or instrumentality of interstate commerce corruptly in furtherance of the acts, practices and courses of business alleged here. Martin's unlawful conduct involved the offer, promise, authorization, and payment of money to the Senior Environment Official, a foreign official as defined in Section 30A(f) of the Exchange Act [15 U.S.C. § 78dd-1(f)].

5.     Venue lies in the District of Columbia, as certain of the acts, practices, and courses of conduct constituting the violations of the laws alleged in this Complaint occurred in this district, where Martin was based during his employment as Monsanto's Government Affairs Director for Asia.

## DEFENDANT

6.     Defendant Martin, age 62, a United States citizen and national, was Monsanto's Government Affairs Director for Asia from August of 1999 until his departure from Monsanto on December 17, 2002.  During his tenure with Monsanto, Martin was based in Washington, D.C. Martin frequently traveled in and around the Asia Pacific region on behalf of Monsanto.

## OTHER RELEVANT ENTITIES

7.     Monsanto is a Delaware corporation based in St. Louis, Missouri.  Monsanto is a global producer of technology-based solutions and agricultural products for growers and downstream customers in agricultural markets in the United States and abroad.  Monsanto's common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78l(b)] and is listed on the New York Stock Exchange.  On January 6, 2005, the Commission filed settled enforcement proceedings against Monsanto for violating the anti-bribery provisions of the Foreign Corrupt Practices Act, and for violating the books and records and internal control provisions of the Exchange Act.  SEC v. Monsanto Co., Case No. 1:05CV00014 (D.D.C. Jan. 6, 2005); Monsanto Company, No. 3-11789, Exchange Act Rel. No. 19023 (Jan. 6, 2005).

## FACTS

### Background

8.     Among its agricultural products, Monsanto develops, produces, and markets certain genetically-modified organisms ("GMOs").  GMOs are promoted as being better than

3

conventional crops because they resist disease and pestilence, and produce higher yields. The use of GMOs, however, has been controversial in some countries, including Indonesia. To increase acceptance of its GMO crops in Indonesia, Monsanto retained the Consulting Firm, which also represented other United States companies doing business in Indonesia.

9.     An employee of the Consulting Firm ("the Consulting Firm Employee"), who is a United States citizen and national, led the Monsanto account. The Consulting Firm Employee worked closely with Martin, who, as Monsanto's Government Affairs Director for Asia, was responsible for certain government affairs activities in the Asia Pacific region, including lobbying for Indonesian legislation favorable to Monsanto's business interests and monitoring Indonesian legislation that could potentially negatively impact Monsanto's business interests.

10.     On behalf of Monsanto, Martin and the Consulting Firm Employee lobbied members of the Indonesian government for legislation and ministerial decrees favorable to GMO crops. In February of 2001, Monsanto obtained limited approval from Indonesia's Ministry of Agriculture allowing farmers in South Sulawesi, Indonesia to grow Bollgard Cotton, one of Monsanto's GMO crops.

11.     However, later in 2001, the Ministry of Environment issued a decree ("2001 AMDAL Decree") reiterating Indonesia's longstanding law requiring an environmental impact assessment ("AMDAL process") for industry and buildings, and inserting several lines of text that made the AMDAL process apply to bio-technology products. As a result of the 2001 AMDAL Decree, GMOs, such as Monsanto's Bollgard Cotton, were required, for the first time, to undergo an AMDAL process before they could be cultivated in Indonesia. As written, the 2001 AMDAL Decree posed a considerable obstacle to the success of Monsanto's existing Bollgard Cotton project and Monsanto's ability to successfully market other GMOs in Indonesia and elsewhere in the Asia Pacific region. To remove this obstacle, Martin focused on lobbying the Senior

Environment Official for repeal of the 2001 AMDAL Decree and gave the Consulting Firm Employee the specific task of neutralizing the impact of the 2001 AMDAL Decree upon Monsanto by having the "offensive" language in the 2001 AMDAL Decree removed or repealed.

### Martin's Plan to Bribe the Senior Environment Official

12.     Due to a change in administration, in August of 2001, new Indonesian Ministry of Environment officials were appointed.  Martin focused his lobbying efforts on the repeal of the 2001 AMDAL Decree.  Martin then met on several occasions with the Consulting Firm Employee and called the Consulting Firm Employee numerous times concerning the repeal of the 2001 AMDAL Decree.  Martin also met on several occasions with the Senior Environment Official. Throughout the relevant period, the Senior Environment Official was a foreign official within the meaning of the Foreign Corrupt Practices Act.

13.     Near the end of 2001, it became clear that the lobbying efforts with the Senior Environment Official were not having any effect.  Martin then told the Consulting Firm Employee to "incentivize" the Senior Environment Official by offering a cash payment of $50,000 to repeal the "offensive" language in the 2001 AMDAL Decree.

14.     The Consulting Firm Employee discussed Martin's offer of the $50,000 cash payment with the Senior Environment Official and understood that the Senior Environment Official would attempt to repeal the amendment in exchange for the payment.  The Consulting Firm Employee informed Martin of this conversation.  Martin directed the Consulting Firm Employee to proceed with the illegal payment and instructed the Consulting Firm Employee not to speak to anyone about the illegal payment other than his supervisor at the Consulting Firm and Martin himself.

**Martin Directs the Falsification of Invoices to Fund the Illegal Payment**

15.    In order to fund the $50,000 payment, Martin directed the Consulting Firm Employee to submit false invoices from the Consulting Firm to Monsanto for consulting services which, once paid, would generate the funds necessary to carry out the unlawful payment.  Martin sent several e-mails, which were processed on a server located in the United States, to the Consulting Firm Employee and spoke to him in person and over his cellular phone regarding the invoicing scheme.  Martin instructed the Consulting Firm Employee to create several false invoices totaling approximately $66,000 (approximately 710,411,600 Indonesian Rupiah), so that the amount paid by Monsanto would include the sum for the bribe and the amount necessary to cover the tax consequences when the Consulting Firm reported Monsanto's payment on those invoices as "consulting fee" income.  Martin directed the Consulting Firm Employee to bill Monsanto for the hours that the Consulting Firm Employee spent traveling on two trips to St. Louis, Missouri in December 2001 and January 2002.  The false invoices were submitted to Monsanto in the United States on several weeks prior to the second trip.

16.    Martin approved the false invoices for payment.  Martin also convinced other Monsanto managers to approve the invoices for payment, despite Martin's knowledge that the invoices were false.  By approving the invoices and convincing other Monsanto managers to approve the invoices, Martin knowingly circumvented Monsanto's system of internal controls and ensured that the false invoices would be inaccurately and improperly recorded by Monsanto as payment for bona fide consulting services when Martin knew that the sole purpose of the invoices was to generate the funds for the illegal payment.  In early March 2002, the Consulting Firm received payment on the false invoices from Monsanto.

17.    As a result of Martin's actions, Monsanto inaccurately recorded the invoices as payment for consulting services.  The improper entry was subsequently included within the

presentation of Monsanto's 2002 Statement of Consolidated Operations, which was filed with the Commission on March 13, 2003 on Form 10-K.

**The Illegal Payment is Made to the Senior Environment Official**

18.    After submitting the false invoices, the Consulting Firm Employee withdrew $50,000 from the Consulting Firm's Indonesian bank account.  On or about February 5, 2002, the Consulting Firm Employee visited the Senior Environment Official at his home.  The Consulting Firm Employee briefly spoke with the Senior Environment Official, informed the Senior Environment Official that he had the money, and then gave an envelope containing $50,000 in $100 bills to the Senior Environment Official.  The Consulting Firm Employee then reported back to Martin that he had made the illegal payment to the Senior Environment Official.  Despite the cash payment, the Senior Environment Official never repealed the language within the 2001 AMDAL Decree that required Monsanto's products to undergo the AMDAL process.

**FIRST CLAIM FOR RELIEF**

**Martin Violated Exchange Act Section 30A**

19.    Paragraphs 1 through 18 are realleged and incorporated by reference.

20.    As described above, Martin, acting on behalf of Monsanto and its subsidiaries, violated the anti-bribery provisions of the Foreign Corrupt Practices Act as codified at Exchange Act Section 30A [15 U.S.C. § 78dd-1], by making use of the mails or a means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, while knowing that all or a portion of such money would be offered, given, or promised, directly or indirectly, to a foreign official for the purpose of influencing the official's acts or decisions, securing an improper advantage, or inducing him to use his influence, to assist Monsanto in obtaining or retaining business.

21.     By reason of the foregoing, Martin violated, and unless restrained and enjoined by this Court will continue to violate, the anti-bribery provisions of the Foreign Corrupt Practices Act.

### SECOND CLAIM FOR RELIEF

**Martin Aided and Abetted Violations of Exchange Act Section 30A**

22.     Paragraphs 1 through 21 are realleged and incorporated by reference.

23.     As a consequence of the conduct described above, Monsanto violated the anti-bribery provisions of the Foreign Corrupt Practices Act as codified at Exchange Act Section 30A [15 U.S.C. § 78dd-1], and Martin knowingly and substantially assisted Monsanto in its violations of these provisions.

24.     By reason of the foregoing, Martin aided and abetted, and unless restrained and enjoined by this Court will continue to aid and abet, violations of the anti-bribery provisions of the Foreign Corrupt Practices Act.

### THIRD CLAIM FOR RELIEF

**Martin Violated Exchange Act Section 13(b)(5) and Exchange Act Rule 13b2-1**

25.     Paragraphs 1 through 24 are realleged and incorporated by reference.

26.     As described more fully above, Martin knowingly circumvented Monsanto's system of internal accounting controls, as described in Exchange Act Section 13(b)(2)(B) [15 U.S.C. § 78m(b)(2)(B)].  Martin also directly or indirectly falsified, or cause to be falsified, Monsanto's books, records or accounts subject to Exchange Act Section 13(b)(2)(A) [15 U.S.C. § 78m(b)(2)(A)].

27.     By reason of the foregoing, Martin violated, and unless restrained and enjoined will continue to violate, Exchange Act Section 13(b)(5) [15 U.S.C. § 78m(b)(5)] and Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1].

## FOURTH CLAIM FOR RELIEF

### Martin Violated Aided and Abetted Violations of Exchange Act
### Sections 13(b)(2)(A) and 13(b)(2)(B)

28.     Paragraphs 1 through 27 are realleged and incorporated by reference.

29.     As detailed above, Monsanto violated Exchange Act Section 13(b)(2)(A) [15 U.S.C. § 78m(b)(2)(A)] by failing to make and keep books and records which, in reasonable detail, accurately and fairly reflected Monsanto's transactions and disposition of its assets. Monsanto also violated Exchange Act Section 13(b)(2)(B) by failing to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: (i) transactions were executed in accordance with management's general or specific authorization; and (ii) transactions were recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and to maintain accountability for its assets. Through his conduct as described above, Martin knowingly provided substantial assistance to Monsanto in its violations of these provisions.

30.     By reason of the foregoing, Martin aided and abetted violations of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B), and unless restrained and enjoined by this Court, will continue to aid and abet such violations.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment against Martin that:

1.  Permanently restrains and enjoins Martin from violating Exchange Act Sections 30A and 13(b)(5) and Exchange Act Rule 13b2-1, and from aiding and abetting violations of Exchange Act Sections 30A, 13(b)(2)(A) and 13(b)(2)(B);

2. Orders Martin to pay a civil money penalty pursuant to Exchange Act Sections 21(d)(3) [15 U.S.C. § 78u(d)(3)] and 32(c) [15 U.S.C. § 78ff(c)]; and

3. Grants such other and further relief as is just and proper.

Dated:  March 6, 2007

Respectfully submitted,

/s/ Arthur S. Lowry_____
Arthur S. Lowry (D.C. Bar #421266)
lowrya@sec.gov
Margaret S. McGuire
mcguirem@sec.gov
Attorneys for Plaintiff
United States Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-4030
Phone: (202) 551-4918 (Lowry)
Fax:    (202) 772-9245 (Lowry)

Of Counsel:
Christopher R. Conte (D.C. Bar #419774)
Richard W. Grime (D.C. Bar #455550)
Christine E. Neal

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,
100 F Street, NE
Washington, DC 20549

                            Plaintiff,

             v.

CHARLES MICHAEL MARTIN,
1502 North Ivanhoe Street
Arlington, Virginia 22210

                            Defendant.

C.A. No. __-____

## CONSENT OF DEFENDANT CHARLES MICHAEL MARTIN

1.       Defendant Charles Michael Martin ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.       Without admitting or denying the allegations of the complaint (except as to personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

         (a)       permanently restrains and enjoins Defendant from violating Sections 13(b)(5) and 30A of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78m(b)(5) and 78dd-1] and Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1] and from aiding and abetting violations of

1

Sections 13(b)(2)(A), 13(b)(2)(B), and 30A of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(2)(B), and 78dd-1]; and

(b)    orders Defendant to pay a civil penalty in the amount of $30,000 under Sections 21(d)(3) and 32(c) of the Exchange Act [15 U.S.C. §§ 78u(d)(3) and 78ff(c)].

3.    Defendant agrees that he shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Defendant further agrees that he shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Defendant pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

4.    Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5.    Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

6.    Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

7.      Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

8.      Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

9.      Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

10.      Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.  In addition, in any

disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

11.    Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegation in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint.  If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

12.    Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action.  For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

13.    Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

14.    Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated:  _2/28/07_

_Charles Michael Martin_ (signature)

Charles Michael Martin

On _2|28_, 2007, CHARLES M. MARTIN, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

_____
Notary Public
Commission expires: _4/30/08_

Approved as to form:

_Richard L. Scheff_ (signature)

Richard L. Scheff, Esq.
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, Pennsylvania 19109
215-772-7502
Attorney for Defendant

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,**
**100 F Street, N.E.**
**Washington, DC 20549**

                          **Plaintiff,**

            **v.**

**CHARLES MICHAEL MARTIN,**
**1502 North Ivanhoe Street**
**Arlington, Virginia 22210**

                      **Defendant.**

**C.A. No. __-____**

## FINAL JUDGMENT

The United States Securities and Exchange Commission ("Commission") having filed a Complaint and Defendant Charles Michael Martin ("Defendant") having filed the Consent of Defendant Charles Michael Martin ("Consent") by which he has entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

### I.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Defendant and his agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 30A of

the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78dd-1], by use of

the mails or any means or instrumentality of interstate commerce corruptly in furtherance of

an offer, payment promise to pay or authorization of the payment of any money, or offer, gift,

promise to give, or authorization of the giving of anything of value to-

    (1) any foreign official for purposes of –

        (A)(i) influencing any act or decision of such foreign official in his official

        capacity, (ii) inducing such foreign official to do or omit to do any act in

        violation of the lawful duty of the official, or (iii) securing any improper

        advantage; or

        (B) inducing such foreign official to use his influence with a foreign

        government or instrumentality thereof to affect or influence any act or decision

        of such government or instrumentality,

in order to assist such issuer in obtaining or retaining business for or with, or directing

business to, any person;

(2) any foreign political party or official thereof or any candidate for foreign political

office for purposes of –

        (A)(i) influencing any act or decision of such party, official, or candidate in its

        or his official capacity, (ii) inducing such party, official, or candidate to do or

        omit to do an act in violation of the lawful duty of such party, official, or

        candidate, or (iii) securing any improper advantage; or

        (B) inducing such party, official, or candidate to use its or his influence with a

        foreign government or instrumentality thereof to affect or influence any act or

        decision of such government or instrumentality,

in order to assist in obtaining or retaining business for or with, or directing business to, any person; or

(3) any person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official, to any foreign political party or official thereof, or to any candidate for foreign political office, for purposes of –

    (A)(i) influencing any act or decision of such foreign official, political party, party official, or candidate in his or its official capacity, (ii) inducing such foreign official, political party, party official, or candidate to do or omit to do any act in violation of the lawful duty of such foreign official, political party, party official, or candidate, or (iii) securing any improper advantage;

    (B) inducing such foreign official, political party, party official, or candidate to use his or its influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist such issuer in obtaining or retaining business for or with, or directing business to, any person.

## II.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant and his agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] by knowingly circumventing or knowingly failing to implement a system of internal accounting controls, or by knowingly falsifying any book,

record, or account described in Section 13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)].

### III.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant and his agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Rule 13b2-1 of the Exchange Act [17 C.F.R. § 240.13b2-1] by, directly or indirectly, falsifying or causing to be falsified, any book, record, or account subject to Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

### IV.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Defendant and his agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from aiding and abetting any violation of Section 30A of the Exchange Act [15 U.S.C. § 78dd-1] by knowingly providing substantial assistance to any issuer which has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] or which is required to file reports under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] that makes use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment promise to pay or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to-

4

(1) any foreign official for purposes of –

    (A)(i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of the official, or (iii) securing any improper advantage; or

    (B) inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist such issuer in obtaining or retaining business for or with, or directing business to, any person;

(2) any foreign political party or official thereof or any candidate for foreign political office for purposes of –

    (A)(i) influencing any act or decision of such party, official, or candidate in its or his official capacity, (ii) inducing such party, official, or candidate to do or omit to do an act in violation of the lawful duty of such party, official, or candidate, or (iii) securing any improper advantage; or

    (B) inducing such party, official, or candidate to use its or his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist in obtaining or retaining business for or with, or directing business to, any person; or

(3) any person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official, to

any foreign political party or official thereof, or to any candidate for foreign political office, for purposes of –

>    (A)(i) influencing any act or decision of such foreign official, political party, party official, or candidate in his or its official capacity, (ii) inducing such foreign official, political party, party official, or candidate to do or omit to do any act in violation of the lawful duty of such foreign official, political party, party official, or candidate, or (iii) securing any improper advantage;

>    (B) inducing such foreign official, political party, party official, or candidate to use his or its influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality, in order to assist such issuer in obtaining or retaining business for or with, or directing business to, any person.

## V.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant and his agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from aiding and abetting any violation of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)], by knowingly providing substantial assistance to an issuer which has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] or which is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S. C. § 78o(d)], in failing:

(A) to make and keep books, records and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of an issuer; or

(B) to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: (i) transactions are executed in accordance with management's general or specific authorization; (ii) transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles, or any other criteria applicable to such statements, and to maintain accountability for assets; (iii) access to assets is permitted only in accordance with management's general or specific authorization; and (iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect any differences.

## VI.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant shall pay a civil penalty in the amount of $30,000 pursuant to Sections 21(d)(3) and 32(c) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78ff(c)]. Defendant shall make this payment within ten (10) business days after entry of this Final Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission. The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a letter identifying Martin as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this

Final Judgment. A copy of the letter and the check should be sent simultaneously to counsel of record of the United States Securities and Exchange Commission in this action. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961. The Commission shall remit the funds paid pursuant to this paragraph to the United States Treasury.

**VII.**

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

**VIII.**

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

**IX.**

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: March _____, 2007

_____
UNITED STATES DISTRICT JUDGE

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

### I (a) PLAINTIFFS

United States Securities and Exchange Commission

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Arthur S. Lowry, Esq., Margaret S. McGuire, Esq.,
U.S. SEC, 100 F St., N.E., Washington, DC
20549-4030 (202) 551-4918

### DEFENDANTS

Charles Michael Martin

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

ATTORNEYS (IF KNOWN)

Richard L. Scheff, Montgomery McCracken, 123
South Broad St., Philadelphia, PA 19109-1029
(215) 772-7502

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

⊙ 1 U.S. Government
Plaintiff

○ 2 U.S. Government
Defendant

○ 3 Federal Question
(U.S. Government Not a Party)

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

**⊙ E. General Civil (Other)      OR      ○ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☒ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if
not administrative agency
review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
15 USC secs. 78m(b), 78dd-1, Violations of Foreign Corrupt Practices Act, internal controls and related provisions of Securities Exchange Act

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ inj. & civil penalty   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE March 6, 2007   SIGNATURE OF ATTORNEY OF RECORD _[signature]_ # 421266

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.